**David P. Ketcham et al. v. Thomas W. Hallock et al.**

1. FRAUDULENT CONVEYANCES—*Reasonable Doubt as to Good Faith.*—In order to establish the proposition that the grantor of a conveyance constructively fraudulent, has retained enough property to meet his liabilities, it is necessary to show that what was retained was abundantly ample to satisfy all creditors, and if there is reasonable doubt in this respect the conveyance must fall, for its effect is to hinder and delay creditors.

2. SAME—*The Rule When They Are so Constructively.*—The condition of the grantor must appear to be such that a prudent man with an hon-

Ketcham v. Hallock.

est purpose and due regard for the rights of his creditors could have made the conveyance, but where the situation is such that at best the property remaining is but a scant protection for creditors, the conveyance must be deemed invalid.

**Memorandum.**—In Chancery. Appeal from the Circuit Court of Coles County; the Hon. FRANCIS M. WRIGHT, Judge, presiding. Bill to set aside a fraudulent conveyance; dismissed on the hearing; appeal by complainant. Heard in this court at the May term, 1894. Reversed and remanded. Opinion filed December 14, 1894.

APPELLANTS' BRIEF, F. K. DUNN, ATTORNEY.

The law does not allow a debtor by any form of contract to transfer his property so as to secure for himself a support for life, or any beneficial use or interest in the property, to the exclusion of his creditors, unless at the time he retains property amply sufficient for the payment of all his debts. Annis v. Boner, 86 Ill. 128; Harting v. Jockers, 136 Ill. 637; Davidson v. Burke, 143 Ill. 139; Moore v. Wood, 100 Ill. 451; Lawson v. Funk, 108 Ill. 502.

Since 1861, a loan of money by the wife to the husband creates a valid debt, capable of being enforced against him, and he may prefer the wife to other creditors in the disposition of his property. Whitford v. Daggett, 84 Ill. 144; Tomlinson v. Matthews, 98 Ill. 178; Payne v. Miller, 103 Ill. 442.

An agreement for a future support is a valuable consideration, but being in effect a transfer of property to the use of the grantor, it will be insufficient to uphold the conveyance, when to do so will operate to the prejudice of existing creditors. Harting v. Jockers, 136 Ill. 627.

Insolvency, at the time of the rendition of a judgment, always raises a presumption of insolvency at the time of the gift. Bump on Fraudulent Conveyances, 293, 294.

The party who sets up a voluntary conveyance in opposition to the claims of pre-existing creditors, is required to show that the means of the donor, independent of the property conveyed, were abundantly ample to satisfy all his creditors. The inquiry is limited to the circumstances of the donor at the time of the conveyance. Bump on Fraudulent Conveyances, 295.

If, in the ordinary course of events, the donor's property turns out to be inadequate to the discharge of his debts, the presumption of fraud remains, although the property reserved may have been deemed originally adequate to that purpose. If he is unable to meet his debts in the ordinary course prescribed by law for their collection, or is reduced to that situation where an execution against him would be unavailing, the conveyance is void, for a solvency which the law can not employ in the payment of the debt of an unwilling debtor, is not distinguishable by any valuable difference from insolvency. The term solvency, in cases of this kind, implies as well the present ability of the debtor to pay out of his estate all his debts, as also such attitude of his property as that it may be reached and subjected, by process of law, to the payment of such debts. The probable, necessary and reasonable demands for the support of his family must, therefore, be taken into account and deducted. The question of solvency, moreover, depends, not upon the nominal value of unsalable goods, but upon whether enough can be realized from the property to pay his liabilities. Bump on Fraudulent Conveyances, 296, 297.

Such gift is never upheld, unless property, clearly and beyond doubt, is retained sufficient to pay all donor's debts. Crumbaugh v. Kugler, 2 Ohio St. 378.

APPELLEES' BRIEF, WILEY & NEAL, ATTORNEYS.

Fraud must be alleged and proved, and in order to set aside a contract as fraudulent, it must appear that it was the intent of both grantor and grantee to commit a fraud against the creditors of grantor. Ewing v. Rankle, 20 Ill. 448; Myers v. Kinzie, 26 Ill. 26; Schroeder v. Walsh, 220 Ill. 412; Dempsey v. Bowen, 25 Ill. App. 192.

A voluntary conveyance by a debtor is not of itself fraudulent. If he retains enough property for the payment of all his debts, he has a right to contract for his support for a longer or shorter period, as he may think best. Bump on Fraudulent Conveyances, 247; Annis v. Bonner, 86 Ill. 128; Harting v. Jockers, 136 Ill. 627.

MR. PRESIDING JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This was a bill in chancery filed by the appellants against the appellees for the purpose of setting aside a conveyance of 160 acres of land by Thos. W. Hallock, who was then the debtor of appellants, to his sons, Thos. E. and William H. Hallock. This conveyance was for the consideration of an annual payment of $600 to the grantor during the joint lives of himself and wife, who also executed the deed, and to the survivor for life. It is conceded the conveyance is fraudulent in law unless the debtor retained sufficient property for the payment of all his existing indebtedness, but it is contended that the decree dismissing the bill may be sustained on the ground that the debtor did retain enough for that purpose.

Hence, the arguments are mainly devoted to a discussion of the facts bearing upon this point, though it is also urged on behalf of appellants that proof shows there was a fraudulent intention to avoid the payment of their debts, so that there was not only constructive but actual fraud. The debt due appellants was an account on money borrowed by Thos. W. Hallock from their mother, Mary Ketcham, who died some four years before the filing of the bill, holding the notes of said Thos. W., amounting in the aggregate to over $5,000, besides interest. Mrs. Ketcham had lived for many years in the house of said Thos. W., who was her brother, and had paid the agreed sum of $96 per year to Mrs. Hallock for board and such care as she required. This conveyance was made about six months after her death. About two years later the appellants (who held the notes as the sole heirs of their mother), and Thos. W., made a settlement in which the amount due on these notes was computed, and in which there was an adjustment of extra compensation to Mrs. Hallock for the care of Mrs. Ketcham during her last years when she was sick and needed extra attention, and the result was an allowance of $834 for all claims against the estate, and the surrender of a note of $50 given by Mrs. Hallock to Mrs. Ketcham, and the execution

of a note for $5,000 by Thos. W. Hallock, payable to the appellants, the old notes being surrendered.

It is urged that while this debt, as thus adjusted, was a valid legal demand, it is lacking in equity, for the reason that it consisted mainly of interest upon money borrowed many years before, and that in fairness and justice a greater allowance should have been made for the care and support of Mrs. Ketcham.

There is no injustice or want of equity to be argued from the fact that the claim is largely made up of interest. Having enjoyed the use of the money the debtor can not complain, even in a court of equity, on this account, when he has voluntarily adjusted the matter by giving his note for the balance found due. Nor is there occasion for complaint as to the extra allowance for the care and support of Mrs. Ketcham. This, also, was adjusted without fraud or unfairness of any sort, so far as appears.

It follows that the note of $5,000 must be treated by the court as it was treated by the parties, as a just and valid liability existing at the time the conveyance in question was executed. When suit was subsequently brought upon it no defense was interposed, and judgment was taken, upon which execution issued and was duly returned *nulla bona*, the defendant having scheduled his personal property.

An alias execution was issued and levied on these lands and then this bill was filed to set aside the said conveyance. The liabilities of Thos. W. Hallock at the time he made the deed amounted to about $8,500, including about $2,500 which he owed his wife.

His assets, as estimated by himself, were then about $10,500.

Of this sum $7,175 consisted of lands in which his wife had an inchoate right of dower. The balance consisted of cattle, horses, hogs, hay, wheat and farming implements. A part of the lands, which figure at $5,300 in the statement of assets, was afterward sold to one Schrisler for the recited consideration of $5,000, for which notes were given, and these notes, to the extent of $4,700, or $4,800, were after-

ward used in buying and improving property which was placed in the name of Mrs. Hallock and occupied by him and her as a residence, and in buying back 100 acres of the lands so sold, which lands so re-acquired were also conveyed to Mrs. Hallock.

The balance of the lands (retained when the deed in question was made), valued at $1,875, in the statement of assets was conveyed to Elizabeth Hallock, wife of James Hallock, another son of Thos. W., for $1,000, which was paid by the release of a debt of $352, due to said James from Thomas W., and by paying $648 to Reed & Mountz for the account of said Thomas W. The $875 balance of the estimated value of this land was given to James.

The personal property was disposed of at various times and the proceeds so used that there was nothing subject to the execution first issued on the judgment in question.

The face value of the assets exceeded the liabilities about $2,000, but this excess was subject to reduction on account of the inchoate right of dower of Mrs. Hallock in the lands which constituted nearly three-fourths of the assets. The actual value of a dower interest is usually difficult of ascertainment, and such an incumbrance would be very much in the way of a creditor seeking to collect a debt by the sale of lands, and would cause them to bring much less than their real value. There is also to be taken into account the delay to be sustained by the purchaser in waiting for the time of redemption to expire.

These items, to say nothing of the cost and expenses of the proceedings, would, perhaps, amount to more than the excess of $2,000. Then there is to be considered the debtor's exemption as to personal property, amounting to $400, and the necessary shrinkage in caring for and converting the rest into money. These matters all considered, it is apparent that whatever the debtor might have been able to accomplish by prompt and careful handing of his assets, in the way of paying his debts, it is quite improbable that his creditors could have realized their claim in full by legal proceedings.

In order to establish the proposition that the grantor of

a conveyance, constructively fraudulent, has retained enough to meet his liabilities, it is necessary to show that what was retained was abundantly ample to satisfy all creditors, and if there is reasonable doubt in that respect the conveyance must fall, for its effect is to hinder and delay creditors. The condition of the grantor must appear to be such that a prudent man, with an honest purpose and due regard for the rights of his creditors, could have made the conveyance, and where the situation is such that, at best, the property remaining is but a scant protection for creditors, the conveyance must be deemed invalid. Bump on Fraudulent Conveyances, Ch. 11. Tested thus, we are constrained to say, this conveyance can not be upheld.

As to the charge of actual fraud there seems to be almost, if not quite, as much foundation. The grantor, though honestly conceding and providing for what he owed his wife, should not have placed, by the means already stated, so much property in her name, nor was he at liberty to make a present of $875 to his son James. These transactions, taken in connection with the disappearance of the personal property, induce the belief that the deed under consideration was made for the express purpose of hindering and delaying the collection of the Ketcham debt, as well as to secure a future support for the grantors.

While all other debts were provided for, no effort was made to pay this, and on the contrary, a course was taken that, if upheld, would effectually prevent its collection. We are of opinion that the decree dismissing the bill was erroneous. It will therefore be reversed and the cause remanded.